## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                     No. CR 06-0695 JB

JULIAN MENDEZ-DE LA TORRE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Sentencing Memorandum, filed June 13, 2006 (Doc. 16)("Sentencing Memorandum"). The Court held a sentencing hearing on June 23, 2006. The primary issue is whether the circumstances of Mendez-De La Torre's case justify a downward deviation from the United States Sentencing Guidelines advisory sentence range under United States v. Booker, 543 U.S. 220 (2005), because the crime of violence that constitutes the basis for an enhancement in his base offense level -- burglary of a home -- did not involve actual violence. Because the Court concludes that, among other factors, Mendez-De La Torre's prior crimes do not involve violence and are old, and because he will serve more time incarcerated for this crime, the Court will deviate from the advisory Guideline range and sentence him consistent with an offense level that does not reflect an enhancement for an earlier crime of violence.

## FACTUAL BACKGROUND

Mendez-De La Torre was born on February 16, 1971 in Parral, Chihuahua, Mexico. See Sentencing Memorandum at 3; Presentence Investigation Report ¶ 25, at 7 ("PSR"). Mendez-De La Torre represents that he is one of six children, that both of his parents still reside in Chihuahua, and

that he maintains a good relationship with his family.  See Sentencing Memorandum at 3; PSR ¶ 25, at 7.  Mendez-De La Torre advises that he first came to the United States in 1987 at the age of sixteen and resided mostly along the border in both Juarez, Chihuahua and El Paso, Texas.  See Sentencing Memorandum at 3.

On November 3, 1988, while residing in El Paso, Texas, Mendez-De La Torre pled guilty to felony burglary of a habitation in Texas state court.  See State v. Mendez, No. 53872 (Tex. 168th Dist. Ct. 1988).  Although a juvenile at the time of his conviction, Mendez-De La Torre was sentenced as an adult to six years custody, suspended for six years probation.  See PSR ¶ 18, at 5; Transcript at 11:16-18 (Lopez).

On December 26, 1988, Mendez-De La Torre pled guilty to a misdemeanor shoplifting charge and was sentenced to 150 days custody.  See PSR ¶ 19.  On January 4, 1989, while a trustee in a work detail at the El Paso County Academy, Mendez-De La Torre escaped from custody.  See PSR ¶ 20, at 5.  Mendez-De La Torre was arrested on another misdemeanor shoplifting charge on October 3, 1989, pled guilty on March 8, 1990, and was sentenced to 150 days custody.  See PSR ¶¶ 20-21, at 5-6.

Subsequent to his October 3, 1989 shoplifting arrest, Mendez-De La Torre pled guilty on March 1, 1990 to felony escape charges and was sentenced to six years custody to run concurrent with his sentence in his 1990 felony burglary conviction, case No. 53872.  See State v. Mendez, No. 57056 (Tex. 120th Dist. Ct. 1990).  Mendez-De La Torre's probation in case No. 53872 was revoked at that time.  See PSR ¶ 18, at 4.  Mendez-De La Torre was released on parole on August 28, 1990 and deported to Mexico on September 12, 1990.  See PSR ¶ 18, at 4.

In August 1998, Mendez-De La Torre was convicted of Illegal Reentry subsequent to having

been convicted of a felony in the United States District Court for the Western District of Texas.  See United States v. Mendez-De La Torre, No. EP-98-CR-365H (W.D. Tex. 1998).  He was sentenced to fifty-seven months custody, and three years supervised release.  See PSR ¶ 22, at 6.  On September 24, 2002, upon release from custody, Mendez-De La Torre was deported to Mexico.  See PSR ¶ 22, at 6.

Mendez-De La Torre married Maria Del Rosario Alvarado-Fernandez in 1989, and the couple have one child, Roxanne, age fourteen.  See Transcript of Hearing at 6:23-25 (Lopez)(taken June 23, 2006)("Transcript");[1] PSR ¶ 28, at 7.  Roxanne and her mother currently live in Isleta, Texas.

After his relationship with Alvarado-Fernandez, Mendez-De La Torre had a relationship with Barbara Rosales-Cordero, a United States citizen from Tucson, Arizona.  See Transcript at 7:7-9 (Lopez).  During the time of their relationship, Mendez-De La Torre and Rosales-Cordero resided together in Juarez, Mexico and, in May 2005 had a child, Julian, Jr.  See id. at 7:10-16.  Mendez-De La Torre represents that he and Rosales-Cordero had a disagreement concerning the couple's financial situation, and, in August 2005, Rosales-Cordero left Juarez, taking Julian, Jr. with her.  See id at 7:22-24.  He further represents that he has had no contact with Rosales-Cordero or his son since that time.  See id. at 7:24-25.  Mendez-De La Torre states that he believes Rosales-Cordero may have returned with Julian, Jr. to her family in Tucson.  See id. at 8:3-7.

A United States Border Patrol agent apprehended Mendez-De La Torre in Dona Ana County, New Mexico on January 30, 2006.  See PSR ¶ 4, at 2.  Mendez-De La Torre acknowledged that he was a Mexican national and did not have immigration documentation to be or remain in the United

---

[1]The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

States.  See id.  Mendez-De La Torre represents that he was attempting to enter the United States to locate Rosales-Cordero and his son.  See Transcript at 9:24-25 (Lopez). He states that he wished to persuade Rosales-Cordero to return to Juarez with Julian, Jr. and that he did not intend to remain in the United States or to seek work.  See id. at 9:25 - 10:4.

## PROCEDURAL BACKGROUND

On April 11, 2006, Mendez-De La Torre filed a waiver of indictment, see Waiver of Indictment, filed April 11, 2006 (Doc. 12), and pled guilty to reentry of a deported alien previously convicted of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a)(1), 1326(a)(2), and 1326(b)(2), see PSR at 1.

In calculating Mendez-De La Torre's base offense level in this matter, the PSR prepared by the United States Probation Office ("USPO") assigned a base offense level of eight pursuant to U.S.S.G. § 2L1.2(a).  See id. ¶ 9, at 3.  Pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii), the USPO added sixteen levels to the base offense level, because Mendez-De La Torre had previously been deported after being convicted for a crime of violence.  See id. ¶ 10, at 3; U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii) (defining a burglary of a dwelling as a crime of violence).  The USPO then subtracted three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and the United States' Motion for § 3E1.1(b) Downward Adjustment, filed June 23, 2006 (Doc. 18).  See PSR ¶ 15, at 4.  An offense level of twenty-one, combined with Mendez-De La Torre's criminal history category of II, results in a recommended Guidelines sentence of forty-one to fifty-one months.

Mendez-De La Torre does not argue that the USPO's calculations are improper or that the content of his PSR is factually inaccurate with respect to the convictions by which his offense level is enhanced.  Rather, he argues that, because of unique circumstances applicable to his case, the

Guidelines sentence is overly severe, and he requests that the Court exercise its discretion to deviate from the Guideline sentence under United States v. Booker.

## POST-BOOKER SENTENCING

In Blakely v. Washington, 542 U.S. 296 (2004), the Supreme Court of the United States held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 542 U.S. at 301 (quoting Apprendi v. New Jersey, 530 U.S. 466, 490 (2000)). Six months after the decision in Blakely v. Washington, the Supreme Court extended its ruling and held that, under the Sixth Amendment, the standard applied to state sentencing statutes in Blakely v. Washington applies to the United States Sentencing Guidelines. See United States v. Booker, 543 U.S. at 235 (finding "no relevant distinction between the sentence imposed pursuant to the Washington statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines" in the cases before the Supreme Court). Accordingly, the Supreme Court reaffirmed its earlier holdings and concluded that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 244.

Consistent with this conclusion, the Supreme Court in United States v. Booker found those provisions of the Federal Sentencing Reform Act of 1984 that made the Guidelines mandatory, see 18 U.S.C. § 3553(b)(1), or which rely upon the Guidelines' mandatory nature, see 18 U.S.C. § 3742(e), incompatible with the Sixth Amendment, see United States v. Booker, 543 U.S. at 245. Accordingly, the Supreme Court in United States v. Booker severed and excised 18 U.S.C. §

3553(b)(1) -- the portion of the federal sentencing statute that made it mandatory for courts to sentence within a particular sentencing Guideline range -- from the remainder of the Act, thus "mak[ing] the Guidelines effectively advisory." Id.  The Supreme Court's holding in United States v. Booker "requires a sentencing court to consider Guideline ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well."  Id. at 245-46.

Congress has directed sentencing courts to impose a sentence "sufficient, but not greater than necessary" to comply with four statutorily defined purposes enumerated in 18 U.S.C. § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. . . .

18 U.S.C. § 3553(a)(2)(A)-(D).  See 18 U.S.C. § 3551(a) ("[A] defendant who has been found guilty of an offense described in any Federal statute . . . shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) to the extent that they are applicable in light of all the circumstances of the case.").  To achieve these purposes, 18 U.S.C. § 3553(a) directs sentencing courts to consider: (i) the Guidelines, (ii) the nature of the offense and the defendant's character; (iii) the types of available sentences; (iv) a policy favoring uniformity in sentences for defendants who commit similar crimes; and (v) the need to provide restitution to victims.  See 18 U.S.C. 3553(a)(1), (3)-(7).

Accordingly, both United States v. Booker and 18 U.S.C. § 3553(a) make it clear that courts

should no longer blindly apply the Guidelines as if they are mandatory.  Nevertheless, the United States Court of Appeals for the Tenth Circuit has clarified that, while the Guidelines are one of several factors enumerated in 18 U.S.C. § 3553(a), they are entitled to considerable deference.  See United States v. Cage, 451 F.3d 585, 593 (10th Cir. 2006)(describing the Guidelines as more than "just one factor among many").  The Guidelines are a significant factor, because "the Guidelines are an expression of popular political will about sentencing that is entitled to due consideration . . . [and] represent at this point eighteen years' worth of careful consideration of the proper sentence for federal offenses." Id. (internal quotations omitted). See United States v. Kristl, 437 F.3d 1050, 1054 (10th Cir. 2006)(holding that sentences within the Guidelines' range will be presumed reasonable). In summation, a sentencing court must now consider all the factors enumerated in 18 U.S.C. § 3553, including the Guidelines, and resolve conflicts between them; the Guidelines remain a highly significant factor in the court's analysis and sentences that fall within the Guidelines' range are presumed reasonable.

## ANALYSIS

Mendez-De La Torre argues that the sentence that the Guidelines advise is inappropriate under the circumstances of his case.  He notes that his burglary conviction occurred eighteen years ago, and argues that the circumstances of that crime suggest that it was not of the type that Congress envisioned when it recommended the sixteen level enhancement for illegal aliens convicted of reentry after having been convicted of a crime of violence.  See Sentencing Memorandum at 3; Transcript at 13:11-15.  Mendez-De La Torre proposes that the Court consider treating the burglary not as a crime of violence, but as an aggravated felony.  See Transcript at 13:21-24 (Lopez).  Under Mendez-De La Torre's proposal, his base offense level would be increased by eight levels instead of sixteen

levels, see U.S.S.G. § 2L1.2(b)(1)(C), resulting in an offense level of thirteen after the subtraction of three levels for acceptance of responsibility. An offense level of thirteen, combined with a criminal history category of II, results in a Guideline sentence range of fifteen to twenty-one months. Mendez-De La Torre requests that the Court sentence him at the bottom of this adjusted range. See Transcript at 14:3-6 (Lopez). At the sentencing hearing in this matter, the United States represented to the Court that, "given the equities in this case as to whether or not the defendant receive the same Guideline adjustment as murderers and rapist and people who have criminal histories that are a lot more recent," if the Court were to grant Mendez-De La Torre's request, the United States would not appeal a deviation equivalent to a base offense level of sixteen before the subtraction of three levels for acceptance of responsibility. Id. at 17:5-12 (Cairns).

1.    **Nature and Circumstances of the Offense.**

Mendez-De La Torre represents that, because he grew up along the United States-Mexico border, he is familiar with American immigration policies and "clearly understands that the situation has changed after 9/11 and [that] the [United States] Government is serious in excluding Mexicans from coming [across illegally]." Id. at 15:8-12. He states that re-entering the United States was a "terrible error in judgment," and that he did so solely out of concern for Rosales-Cordero and his son, Julian, Jr. Id. at 15:13-15. He contends that he had not returned to the United States since his 2002 deportation, that he had no intention to return when the Border Patrol apprehended him, and that he still has no intention to remain in the United States.

Although the Court is sympathetic to the reasons Mendez-De La Torre professes to have for returning to the United States, it remains cognizant that Congress, as the elected branch of government, has decided that illegal reentry -- especially by those who have committed felonies -- is

a serious crime.  In the post-September 11, 2001 world, border security and immigration policy have become of paramount importance, and it is Congress', not the Court's, prerogative to make policy in this area.  Moreover, the Court regrettably sees many similarly situated defendants who attempt illegal reentry for equally compelling reasons.  The nature and circumstances of Mendez-De La Torre's offense do not counsel for a deviation from the Guidelines.

### 2.     <u>Mendez-De La Torre's History and Characteristics</u>.

The Court acknowledges that Mendez-De La Torre's most recent criminal history relates to his 1998 conviction for illegal reentry.  Mendez-De La Torre represents that he entered the United States in 1998 to find work to provide for his family and children.  <u>See</u> Sentencing Memorandum at 3.  He states that he has always supported his children, that he has a supportive family in Juarez, and that he maintains close relations with his family.  <u>See id</u>; PSR ¶ 25, at 7; Transcript at 10:5 (Lopez).

The remainder of Mendez-De La Torre's criminal history dates back to a period between 1988 and 1990, when he was approximately eighteen years old.  His crimes resulted in his incarceration for a series of three thefts, two of which were designated misdemeanors.  Mendez-De La Torre maintains that the one felony theft conviction, his 1990 burglary of a habitation, involved he and a friend going into a house when no one was home to see if there was anything of value which they could take.  <u>See</u> Transcript at 13:11-13.  Mendez-De La Torre was also convicted for escape after having been initially imprisoned.

Mendez-De La Torre's most serious conviction, the felony burglary, occurred when he was juvenile, and, while burglary of a dwelling is considered a crime of violence under the Guidelines, there is nothing in the record suggesting that Mendez-De La Torre acted violently in that instance.  Nor is there any indication that he has ever been charged with any other violent crime, or evidence

that he behaves violently or has a violent character.  Finally, the Court notes that other defendants who reenter the United States with similar backgrounds often serve sentences shorter than the one the Guidelines recommend for Mendez-De La Torre under the United States Attorney's Fast Track Program.

In sum, the picture the Court has regarding Mendez-De La Torre's criminal history and his character do not prohibit it from considering the equities at play in this case and a deviation from the Guidelines' advisory sentence.  Considering the age and factual circumstances of Mendez-De La Torre's felony burglary conviction, and the evidence of his character he has presented, the Court believes some deviation is appropriate and that it can fashion a reasonable sentence that does punish Mendez-De La Torre for returning to the United States, but which is something less severe than what the Guidelines would impose.

### 3. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment.

Mendez De La Torre represents that he is cognizant of and accepts the fact that he cannot ever legally reenter the United States.  See Sentencing Memorandum at 3.  He argues that the incarceration he has already served constitutes sufficient punishment to deter his return to the United States.  See id.  Mendez-De La Torre argues that, given the nature and circumstances of the offense, his particular history and characteristics, and that, since he was incarcerated on January 30, 2006, he has been unable to provide for his family, the sentence he proposes reflects the seriousness of the offense and will also promote respect for the law.  The Court has carefully considered each of the relevant factors under 18 U.S.C. § 3553(a) and agrees with Mendez-De La Torre.

Because the Court notes that Mendez-De La Torre has previously served a lengthier prison

-10-

sentence and still returned to the United States, it does have some concern whether the sentence he proposes will serve as adequate deterrence to similar conduct in the future. Nevertheless, Mendez-De La Torre will be serving additional time and the Court believes this additional time, in light of the other factors at play in this case, will serve as adequate deterrence to criminal conduct in the future. Nor does the Court does believe, given his history, that Mendez-De La Torre poses a danger to the public. Finally, Mendez-De La Torre represents that there is "no demonstrated need of educational or vocational training in this case . . . [and he] is in good health and not in need of medical care." Sentencing Memorandum at 4.

After considering the factual circumstances and age of the crime that constitutes the basis for the enhancement in Mendez-De La Torre's base offense level, his personal history and characteristics, and the statutory factors applicable to this analysis pursuant to 18 U.S.C. § 3553(a), the Court finds a deviation from the Guidelines is appropriate in this case.

**IT IS ORDERED** that the Defendant is committed to the custody of the Bureau of Prisons for a term of fifteen months and is placed on supervised release for a term of two years. The term of supervised release shall be unsupervised with the mandatory and standard conditions and the following special condition: (i) the Defendant must not reenter the United States without legal authorization. The Court recommends the Immigration and Naturalization Service begin removal proceedings during the service of the Defendant's sentence. The Defendant will pay a special assessment of $100.00 which is due immediately.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
  United States Attorney
Norman Cairns
  Assistant United States Attorney
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Floyd W. Lopez
Albuquerque, New Mexico

      *Attorney for the Defendant*